IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC TRENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 3:20-cv-213 |
| | ) Judge Stephanie L. Haines |
| COUNTY OF SOMERSET, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## OPINION

Plaintiff Eric Trent ("Plaintiff") commenced this action by filing a single count complaint (ECF No. 1) alleging a claim under 42 U.S.C. §1983 against Defendants County of Somerset, County Commissioners John Turlingo and Gerald Walker in their official capacities, and County Commissioner Gerald Walker in his individual capacity. In his Complaint (ECF No. 1), Plaintiff alleged Defendants violated his First and Fourteenth Amendment rights by using their influence to have him arrested and later terminated in retaliation for speaking out regarding county hiring practices. Defendants then filed a Motion to Dismiss the Complaint (ECF No. 18). On September 16, 2021, the Court issued a Memorandum Order (ECF No. 22) that granted in part and denied in part Defendants' motion. Specifically, the Court dismissed with prejudice the official capacity claims against Defendants Turlingo and Walker and the punitive damages claim against Defendant Somerset County, but dismissed Plaintiff's claims against Defendant Walker in his individual capacity without prejudice and with leave to amend. On October 11, 2021, Plaintiff then filed an Amended Complaint (ECF No. 23). Pending before the Court is Defendants' Motion to Dismiss Gerald Walker in his Individual Capacity as Well as Claims for Punitive Damages (ECF No. 24) which asserts the Court should dismiss the individual capacity and punitive damages claims against

1

Defendant Walker because Defendant Walker is entitled to qualified immunity. For the foregoing reasons, the Court DENIES Defendants' motion (ECF No. 24).

**I. Factual and Procedural Background**

The Court set forth the background of this case in its previous Memorandum Order (ECF No. 18) and will not recite the factual and procedural history again. In summary, Plaintiff worked for Defendant Somerset County as a maintenance employee for approximately three and a half years and also serves as a Township Supervisor for Lincoln Township, which is located in Somerset County, Pennsylvania (ECF No. 23 at ¶¶5,8). On March 23, 2019, Plaintiff attended an event that the parties refer to as the "Mega Show" in Somerset County where he had a private conversation with Defendant Walker in which he expressed his strong disagreement with the hiring practices of Defendant Somerset County, namely his disagreement with Defendant Somerset County preferring to hire employees from outside the county and the state over county employees. *Id.* at ¶¶11, 16, 17. Plaintiff stated he would work to remove Defendant Walker from office over this issue. *Id.* at ¶17.

On March 27, 2019, after being contacted by Human Resources and Defendant Walker to set up a meeting to discuss Plaintiff's issues with the hiring practices, Plaintiff was escorted off the premises at his work by the County Defendants and law enforcement. *Id.* at ¶¶22-24. A *Loudermill*[1] hearing took place on March 29, 2019, and, later that same day a criminal complaint was filed against Plaintiff. *Id.* at ¶¶31-32. However, on June 17, 2019, he was found not guilty of the criminal charge against him. *Id.* at ¶36.

---

[1] *Loudermill* hearing refers to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), wherein the Supreme Court held that, prior to termination, a public employee must be afforded notice and an opportunity for a hearing appropriate to the nature of the case.

Plaintiff claims Defendants terminated him from his job and forced him to defend himself against baseless criminal charges in retaliation for speaking out against Defendant Somerset County's hiring practices. The Court initially dismissed without prejudice the claims against Defendant Walker in his individual capacity as the Complaint (ECF No. 1) referred to all Defendants globally and failed to describe any individual specific action that Defendant Walker took to initiate criminal charges against Plaintiff and then have Plaintiff terminated from his employment. Plaintiff's Amended Complaint (ECF No. 23) amends these claims to include allegations specifically against Defendant Walker in his individual capacity.

On October 25, 2021, Defendants filed a Motion to Dismiss Gerald Walker in his Individual Capacity as Well as Claims for Punitive Damages (ECF No. 24). In that motion, Defendants contend Plaintiff's claims against Defendant Walker in his individual capacity must be dismissed because he is entitled to qualified immunity as a public official. On November 15, 2021, Plaintiff filed his Brief in Opposition to the Motion to Dismiss Gerald Walker in his Individual Capacity (ECF No. 27). In his response, Plaintiff argues the Amended Complaint (ECF No. 23) pleads facts demonstrating that Defendant Walker is not entitled to qualified immunity as he personally contacted law enforcement to request Plaintiff be arrested and later participated in terminating Plaintiff's employment in retaliation for Plaintiff exercising his First Amendment rights. Defendants filed a Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Gerald Walker in his Individual Capacity (ECF No. 28) which reiterates their position that Plaintiff failed to plead sufficient facts to overcome Defendant Walker's qualified immunity. This matter is now ripe for disposition.

**II. Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 664. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (2009). While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner,* 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Twombly,* 550 U.S. at 570).

**III.     Analysis**

Individual capacity claims under section 1983 "seek to recover money from a government official, as an individual, for acts performed under color of state law." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). A section 1983 retaliation claim predicated on the First Amendment must show that: (1) the plaintiff engaged in activity protected by the First Amendment, (2) the employer responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) the protected activity was the cause of the retaliatory action. *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In the Motion to Dismiss (ECF No. 24), Defendant Walker groups Plaintiff's allegations into two categories: allegations regarding Plaintiff's employment and allegations regarding Defendant Walker allegedly directly requesting criminal charges to be filed by the police (ECF No. 24 at ¶9). As to Plaintiff's employment, Defendant Walker concedes Plaintiff pleads Defendant Walker reported allegedly false information to Somerset County's Human Resources, directed Human Resources to take disciplinary action against Plaintiff, used his position as Chair of the Somerset County Commissioners to entertain a motion from another Commissioner to discharge Plaintiff at the March 29, 2019 hearing, was involved in the decision-making process to terminate Plaintiff's employment, demonstrated direct personal and political animus against Plaintiff, and allegedly resented Plaintiff speaking out in various places about matters of public concern. *Id.* As to the criminal charges filed against Plaintiff, Defendant Walker acknowledges Plaintiff pleads Defendant Walker reported false information to police, directly requested criminal charges be filed against Plaintiff "knowing that his power and influence…would assuredly mean that…charges would be filed," and that Defendant Walker "accompanied" law enforcement as

they escorted Plaintiff off the county premises, in a "disproportionate and publicly visible display of potential force." *Id.*

### A. Qualified Immunity

Defendant Walker argues he is entitled to qualified immunity because Plaintiff's allegations do not demonstrate that his actions violated a clearly established federal right. To determine whether qualified immunity shields a government official's action from § 1983 liability, courts apply a two-step test and inquire (1) whether the facts alleged by the plaintiff establish a violation of a constitutional right and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation such that a reasonable official would understand that what he is doing violates that right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

As to First Amendment retaliation claims, whether qualified immunity defeats a First Amendment retaliation claim usually cannot be determined on the face of the pleadings, unless the "legitimate basis for the actions [is] so apparent that the plaintiff's allegations of retaliatory motive could not alter the conclusion that…the defendants would have been compelled to reach the same decision even without regard for the protected First Amendment activity." *Smith v. Cent. Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 650 (M.D. Pa. 2005); see also *Lodato v. Ortiz,* 314 F.Supp.2d 379, 386 (D.N.J. 2004) ("Ordinarily, subjective intent is not relevant to determining whether an official is entitled to qualified immunity. However, in a retaliation claim, the officials' intent is central to the first question of whether the [plaintiff] states a claim for the violation of a constitutional right."). The determination of whether a plaintiff's First Amendment rights are adversely affected by retaliatory conduct "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between [the two parties], and the nature of the retaliatory acts." See *Ford v. City of Harrisburg*, No. 1:17-CV-00908, 2018 U.S. Dist. LEXIS 180876, at

*24-25 (M.D. Pa. Oct. 16, 2018) (internal citations omitted); *see also Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").

Defendant Walker focuses on the second prong of the qualified immunity test and argues Plaintiff has failed to establish Defendant Walker's actions violated Plaintiff's clearly established federal rights. An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Defendant Walker contends there is no "clearly established right" that an elected official must never talk about, have influence over, or vote on the continued employment of an employee with whom he has had an altercation. However, this characterization greatly minimizes Plaintiff's allegations against Defendant Walker. Plaintiff alleges Defendant Walker initiated criminal charges against him and then sought to terminate his employment because of Plaintiff's speech about the Somerset County's hiring practices. In examining existing precedent relating to

Defendant Walker's alleged actions, the Court finds it is well established that "the threat of dismissal from public employment is ... a potent means of inhibiting speech." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). Therefore, the threat of dismissal, depending on its clarity and credibility, can form the basis for a claim of retaliation in violation of the First Amendment. *See id.* (noting that the "exercise of [the] right to speak on issues of public importance may not furnish the basis for ... dismissal from public employment"). In this case, Defendant Walker did not just threaten Plaintiff's employment because of Plaintiff's speech, but he allegedly took steps to have him falsely criminally charged and later terminated. Based on existing precedent, the Court cannot conclude that Plaintiff's rights from such retaliation were not clearly established.

Defendant Walker also urges the Court to view his alleged statements to Human Resources, to the police, and later, his statements at Plaintiff's termination hearing as simply being statements that were critical of and/or defamatory to Plaintiff, suggesting that to do otherwise would infringe upon Defendant Walker's own First Amendment rights as a public official. *See Bartley v. Taylor*, 25 F. Supp. 3d 521, 532 (M.D. Pa. 2014) ("The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated.").

In support of this argument, Defendant Walker relies heavily on the case *McLaughlin v. Watson*, 271 F.3d 566 (3d Cir. 2001). In that case, the United States Attorney for the Eastern District of Pennsylvania was sued for advocating that agents of the Pennsylvania Attorney General's Office be fired. *Id.* at 568. The Third Circuit reasoned that when a public official retaliates merely by speaking out critically, the official's own First Amendment speech rights were implicated. The Third Circuit concluded the U.S. Attorney was entitled to qualified immunity,

finding that a U.S. Attorney had no authority to threaten or coerce a state officer, and therefore his suggestion of retaliation was mere speech. *Id.* at 573-74; *see also Schleig v. Borough of Nazareth*, 695 F. App'x 26, 32 n.4 (3d Cir. 2017).

Unlike *McLaughlin*, in this case, Plaintiff has alleged Defendant Walker had the authority to and did directly retaliate against Plaintiff by initiating false criminal charges against Plaintiff and later driving the termination of Plaintiff's employment. This direct retaliation readily distinguishes this case from *McLaughlin*. *See Schleig v. Borough of Nazareth*, 695 F. App'x 26, 32 n.4 (3d Cir. 2017) (finding defendant was not entitled to qualified immunity because "[h]ere, in contrast [to *McLaughlin*], [defendant] threatened to take direct retaliatory action against [plaintiff]"). Moreover, as to Defendant Walker's assertion of his own First Amendment speech rights, Defendant Walker's alleged actions to have Plaintiff criminally charged and terminate Plaintiff's employment cannot credibly be characterized as being simply speech that is "critical" of Plaintiff. *See Willson v. Yerke*, No. 3:10cv1376, 2011 U.S. Dist. LEXIS 8739, at *12 (M.D. Pa. Jan. 31, 2011) ("the purpose of limiting retaliation claims in situations where a public official speaks on matters of public concern is to allow open, if sharp, debate on important issues, not to immunize public officials for any speech they choose to make, no matter how personal or unrelated to public business.").

Based on the foregoing, the Court finds Defendant Walker is not entitled to qualified immunity at this stage of the proceedings. Defendants' description of the incident at the Mega Show is markedly different from Plaintiff's version of the conversation between himself and Defendant Walker and subsequent events, but Defendants must recognize they are not permitted to challenge the veracity of Plaintiff's allegations at this time. Ultimately, these disputed facts only further support that it would be inappropriate for the Court to decide the merits of Plaintiff's

individual capacity claims against Defendant Walker at the motion to dismiss stage.

### B. Punitive Damages Claims

Defendant Walker requested Plaintiff's claims for punitive damages against him be dismissed if the Court dismissed the claims against Defendant Walker in his individual capacity. As the Court does not dismiss these claims, the Court denies Defendant Walker's request to dismiss Plaintiff's claims for punitive damages.

### IV.   Conclusion

For the reasons stated herein, the Court will DENY Defendants' Motion to Dismiss Gerald Walker in his Individual Capacity as Well as Claims for Punitive Damages (ECF No. 24) and defendants are directed to file their answer and affirmative defenses on or before October 17, 2022. An appropriate Order will issue.

                                                                     Stephanie L. Haines
                                                                     United States District Judge

cc/ecf: All counsel of record